1998 ND 193

**Paul D. LARSEN, Appellant,**

v.

**COMMISSION ON MEDICAL COMPETENCY and North Dakota Board of Medical Examiners, Appellees.**

**Civil No. 980100.**

Supreme Court of North Dakota.

Nov. 3, 1998.

Jay H. Fiedler of Pearson, Christensen, Larivee, Clapp, Fiedler, Fischer & Jensen, Grand Forks, for appellant.

John M. Olson, Special Assistant Attorney General, Bismarck, for appellees.

SANDSTROM, Justice.

[¶ 1] Paul Larsen appealed from a judgment affirming the North Dakota Board of Medical Examiners' decision to revoke his license to practice medicine in the State of North Dakota. We conclude the Board's decision did not violate administrative and statutory procedures and did not deprive Larsen of due process. We also conclude the Board's decision is supported by a preponderance of the evidence. We therefore affirm.

I

[¶ 2] Larsen was a licensed physician in North Dakota for twenty-four years. He began treating a female patient in June of 1993, and diagnosed the patient as suffering from bipolar disorder. Larsen began treating the patient with various medications. Eventually, Larsen and the patient began a consensual sexual relationship, although they disagree about when it began. The patient testified the sexual relationship started in March 1994, but Larsen testified it began in late summer 1994.

[¶ 3] Larsen wrote the patient a letter, dated April 21, 1994, recommending she start seeing another physician for treatment. Despite the recommendation in his letter, Larsen saw the patient in the clinic on September 12, 1994. Larsen sent another letter, dated September 27, 1994, stating "I can no longer function in any capacity as your physician and must insist that you find other health care immediately."

[¶ 4] In September 1996, as the result of a formal grievance by the patient, the Commission on Medical Competency, under N.D.C.C. § 43–17–31(6), filed a complaint with the Board alleging Larsen "engaged in the performance of dishonorable, unethical, or unprofessional conduct likely to deceive, defraud, or harm the public ... and/or ... engaged in sexual abuse, misconduct, or exploitation related to the practice of medicine ..." in violation of N.D.C.C. §§ 43–17–31(6), (16). The Commission's charges were a result of Larsen's sexual relationship with the patient.

[¶ 5] The Commission also charged Larsen "engaged in the use of a false, fraudulent, or forged statement or document, or the use of a fraudulent, deceitful, dishonest, or immoral practice, in connection with the physician licensing requirements" under N.D.C.C. § 43–17–31(1). More specifically, the Commission maintained "[i]n completing his application for renewal of his North Dakota Medical License, [Larsen] falsely answered 'no' to the question of whether, since his last renewal, he received treatment for any mental illness, when in fact, [Larsen] received treatment" for a mental illness. As a result of the charges, the Commission, under N.D.C.C.

§ 43–17–30.1(1), requested revocation of Larsen's license to practice medicine in North Dakota.

[¶ 6] The Commission's complaint requested revocation of Larsen's license to practice medicine, based on either or both the specified grounds.

[¶ 7] Following three prehearing conferences with the administrative law judge ("ALJ"), a hearing was rescheduled for August 5, 1997. During a telephone conference on August 4, 1997, Larsen's counsel indicated neither he nor Larsen would be at the hearing to contest the complaint.

[¶ 8] On August 5, 1997, the administrative hearing was held in Bismarck. The ALJ took official notice of a letter to the Board indicating Larsen was resigning his license effective midnight, August 4, 1997. Throughout the letter of resignation, Larsen continued to deny the charges detailed in the complaint. The ALJ noted under N.D.C.C. § 28–32–08.4 and N.D.C.C. § 54–57–03(3), the Board could have proceeded against Larsen in default, "but the Commission elected to present a *prima facie* case."

[¶ 9] Based on the evidence presented at the hearing and the oral argument of the Commission's attorney, the ALJ released his recommended findings of fact, conclusions of law, and an order on August 7, 1997. The ALJ concluded "[t]he greater weight of the evidence shows that Larsen violated the provisions of N.D.C.C. ch. 43–17 as indicated in the findings of fact and conclusions of law." After recognizing the Commission's recommendation, the ALJ agreed with the Commission and recommended revocation of Larsen's license to practice medicine in North Dakota.

[¶ 10] On August 19, 1997, the Board of Medical Examiners met to discuss solely what action to take against Larsen. The Board adopted the ALJ's recommendation, and Larsen's license to practice medicine in North Dakota was revoked. The Commission, however, indicated Larsen would not be precluded from demonstrating rehabilitation to enable future North Dakota medical licensure.

[¶ 11] In September 1997, Larsen appealed the Board's decision to the district court. Larsen's motion for leave to offer additional exhibits under N.D.C.C. § 28–32–18 was denied because of "no showing of reasonable grounds for failure to offer the evidence in the hearing." The district court issued a memorandum opinion affirming the Board's decision to revoke Larsen's license, and judgment was entered accordingly.

[¶ 12] Larsen appealed from the judgment of the South Central Judicial District Court and the order denying his motion for leave to offer additional exhibits under N.D.C.C. § 28–32–18. The judgment was filed January 27, 1998, and the notice of appeal was filed March 31, 1998, within the sixty-day requirement. N.D.R.App.P. 4(a). The district court had jurisdiction under N.D.C.C. § 27–05–06. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

## II

[¶ 13] Larsen raises nine issues on appeal: (1) the ALJ's conclusion his sexual relationship with a patient was "sexual abuse, misconduct, or exploitation related to [his] practice of medicine" was not supported by any finding of fact; (2) the ALJ's conclusion he fraudulently falsified or forged statements related to his medical licensing was not supported by any finding of fact; (3) he was denied due process by failure of the Commission's counsel to submit exculpatory evidence; (4) the Board's decision to revoke his license was unsupported by the ALJ's findings of facts and conclusions of law; (5) he was denied due process by the Board's failure to deliberate; (6) he was denied due process because revocation of his license was excessive as a matter of law; (7) he was denied statutory due process because the Board proceeded on a default basis without complying with N.D.C.C. § 28–32–08.4; (8) the Board lacked authority to revoke his license; and (9) the district court erred by denying his motion for leave to offer additional exhibits under N.D.C.C. § 28–32–18.

## III

[¶ 14] On appeal from decisions by administrative agencies, we review the agen-

cy's decision, not the district court's. *Gale v. North Dakota Bd. of Podiatric Med.*, 1997 ND 83, ¶ 10, 562 N.W.2d 878 (citing *S.N.S. v. North Dakota Dep't of Human Serv.*, 474 N.W.2d 717, 719 (N.D.1991)). Under N.D.C.C. § 28–32–19, we affirm the Board's order unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. Provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

Our standard of review is the same as the district court's review under N.D.C.C. § 28–32–21. In reviewing the factual basis for an administrative agency's decision, there are four critical issues: (1) whether the findings of fact are supported by a preponderance of the evidence; (2) whether the conclusions of law are sustained by the findings of fact; (3) whether the agency's decision is supported by the conclusions of law; and (4) whether decision is in accordance with the law. *See, e.g., Baer v. Director, North Dakota Dep't of Transp.*, 1997 ND 222, ¶ 7, 571 N.W.2d 829 (citations omitted). "In determining whether an agency's findings of fact are supported by a preponderance of the evidence, the standard of review is whether a reasoning mind could reasonably have determined the factual conclusions were supported by the weight of the evidence." *Rudolph v. North Dakota Dep't of Transp. Dir.*, 539 N.W.2d 63, 66 (N.D.1995) (citing *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979)). The findings of fact must be adequate to enable a reviewing court to ascertain the basis of the agency's decision. *Pleinis v. North Dakota Workers Comp. Bureau*, 472 N.W.2d 459, 462 (N.D.1991) (citing *Walter v. North Dakota State Highway Comm'r*, 391 N.W.2d 155

(N.D.1986); *Matter of Boschee*, 347 N.W.2d 331 (N.D.1984)).

### A

[¶ 15] Larsen argues "[s]ignificantly, the Administrative Law Judge made no factual finding that the sexual relationship was abusive or exploitative. As significantly, the Administrative Law Judge made no factual finding that the relationship was related to Dr. Larsen's practice of medicine." We conclude the ALJ's conclusion of law was supported by findings of fact.

[¶ 16] The Commission's complaint alleged Larsen violated N.D.C.C. § 43–17–31(6) and N.D.C.C. § 43–17–31(16). A physician may be disciplined under N.D.C.C. § 43–17–31(6) for "[t]he performance of any dishonorable, unethical, or unprofessional conduct likely to deceive, defraud, or harm the public" and under N.D.C.C. § 43–17–31(16) for "[s]exual abuse, misconduct, or exploitation related to the licensee's practice of medicine." After considering the evidence and the oral arguments of the Commission's counsel during the hearing, the ALJ's four findings of fact included the following:

4. The evidence shows that Larsen engaged in a sexual relationship with a patient, the patient referred to above. This sexual relationship occurred throughout much of 1994, while the patient was seeing Larsen in a physician/patient relationship. See exhibits 2, 3, 4, 5, 6, 7, and 13, especially exhibit 13, the deposition of the patient. The relationship is even referred to in the notes on treatment of Larsen, see exhibit 8, though not by the patient's name. The evidence shows that the patient, who was extremely troubled herself, and for whom Larsen was prescribing medication, is especially the sort of patient that a physician should avoid in any type of relationship, other than in a physician/patient context. Any type of sexual relationship with such a patient is inappropriate. See exhibits 11a, 11b, and 12. The sexual relationship between Larsen and the patient included sexual intercourse both at Larsen's home and at other locations.

The ALJ then concluded as a matter of law:

2. The evidence shows, by the greater weight of the evidence, that Larsen en-

gaged in a sexual relationship with a patient and that such conduct was sexual abuse, misconduct, or exploitation related to Larsen's practice of medicine under N.D.C.C. § 43–17–31(16), and the performance of dishonorable, unethical, or unprofessional conduct likely to deceive, defraud, or harm the public within the meaning of N.D.C.C. § 43–17–31(6).

[¶ 17] When analyzing findings of fact and conclusions of law, we look to substance rather than labels given by the district court, or an ALJ. *Butts Feed Lots, Inc. v. Board of County Comm'rs*, 261 N.W.2d 667, 669 (N.D. 1977) (citing *Ferguson v. Ferguson*, 202 N.W.2d 760 (N.D.1972)); *see also Hamilton v. Winter*, 281 N.W.2d 54, 58 (N.D.1979). Accordingly, based on the ALJ's findings of fact and conclusions of law as a whole, we conclude the ALJ did find the sexual relationship between Larsen and the patient was "dishonorable, unethical, or unprofessional conduct likely to deceive, defraud, or harm the public" and was "sexual abuse, misconduct, or exploitation related to Larsen's practice" in violation of N.D.C.C. § 43–17–31(6) and N.D.C.C. § 43–17–31(16). We further conclude a reasoning mind could have reasonably reached that factual conclusion, and therefore the Board's decision is supported by a preponderance of the evidence.

### B

[¶ 18] Larsen asserts the ALJ's conclusion of law he engaged in the use of false, fraudulent or forged statements in connection with his medical licensing was not supported by any factual finding concerning Larsen's knowledge of the falsity.

[¶ 19] The evidence submitted to the ALJ included notes of therapy sessions by a psychologist who treated Larsen from January 6, 1994, through October 12, 1994. The treatment notes by his psychologist detailed Larsen's depression and his history of self-prescribing anti-depressants. The ALJ's findings of fact included the following:

2. In his applications for license renewals from 1994–1997, Larsen answered no to question numbers 9 and 10 (he checked a box before the word "No" for each question). Question number 9 asks, "[h]ave

you had any serious physical or mental illness?" Question number 10 asks, "[h]ave you received treatment for any mental illness?" Each application form indicates that each question is to be answered understanding that the question relates to "[s]ince you last applied for renewal of your North Dakota License . . ." Exhibit 14.

3. The evidence shows that Larsen, while undergoing treatment himself in 1994, was diagnosed with mental illness (see exhibit 8—"[w]orking diagnosis is Axis I–Major depression, recurrent (DSM–IIIR 296.3). Rule out bipolar or cyclothymic disorder. Axis II: Diagnosis or condition deferred on Axis II (DSM–IIIR 799.90)").

The ALJ's findings of fact illustrated the falsity of Larsen's answers and necessarily his knowledge of his "working" mental diagnosis. Based on the findings of fact, the ALJ concluded:

3. The evidence shows, by the greater weight of the evidence, that Larsen, in the filing of applications for license for license years 1994–97, engaged in the use of a false, fraudulent, or forged statement, or the use of a fraudulent, deceitful, dishonest, or immoral practice, in connection with the physician licensing requirements within the meaning of N.D.C.C. § 43–17–31(1).

[¶ 20] We conclude a reasoning mind could have reasonably reached those factual findings and the Board's conclusion of law that Larsen violated N.D.C.C. § 43–17–31(1) was supported by the findings of fact.

### C

[¶ 21] Larsen argues he was denied due process in two ways: (1) the Board did not consider evidence unfavorable to the revocation of his license, and (2) the "prosecutor" failed to submit material evidence to the ALJ. Larsen's argument is without merit, and we conclude he was not denied due process.

[¶ 22] Larsen relies on this Court's decision in *Bromley v. North Dakota Workmen's Comp. Bureau*, 304 N.W.2d 412 (N.D.1981), to support his contention. At issue in *Bromley* were conflicts between the testimony giv-

en at the hearing and discrepancies in the attending physician's report submitted to the agency. *Id.* at 415. This Court concluded the Bureau's decision was not supported by a preponderance of the evidence because the Bureau did not seek to resolve discrepancies in the attending physician's report and failed to consider the portion of the report unfavorable to its ultimate decision. *Id.* at 418. Although an agency has an obligation to consider both favorable and unfavorable evidence, Larsen's position he was denied due process because the Commission failed to provide the ALJ with "known exculpatory evidence" is not supported by *Bromley* nor by the record.

[¶ 23] Larsen argues the ALJ was not provided with the testimony of the patient indicating Larsen "did not act inappropriately during any of her clinic consultations, that the sexual relationship was entirely consensual, and that Dr. Larsen did not attempt to exploit the physician/patient relationship by suggesting that the relationship had anything whatsoever to do with her course of treatment." The Commission, however, has conceded those specific facts, in addition to submitting the deposition of the patient as evidence at the administrative hearing. The "exculpatory evidence" Larsen maintains was not presented at the evidentiary hearing was highlighted by Larsen's counsel during his oral argument at the Board's meeting on August 19, 1997. Furthermore, Larsen and his counsel had a meaningful opportunity to be heard and present evidence at the administrative hearing, but chose not to do so. Therefore, we conclude Larsen was not denied due process.

**D**

[¶ 24] Larsen contends the order recommending revocation of his license to practice medicine was unsupported by the findings of fact or the conclusions of law because neither addressed the extent of the discipline or any particular basis for the severity of the discipline. Larsen argues there is no reference in the findings of fact or conclusions of law to explain why the ALJ recommended revocation or why the Board adopted the sanction without discussing a lesser discipline. We

conclude revocation of Larsen's license was in accordance with the law.

[¶ 25] An agency's decision must be supported by the conclusions of law and must be in accordance with the law. *See, e.g., Baer v. Director, North Dakota Dep't of Transp.*, 1997 ND 222, ¶ 7, 571 N.W.2d 829. The decision to revoke Larsen's license was supported by the conclusions of law adopted by the Board, which detailed Larsen's violation of N.D.C.C. § 43–17–31(1), (6), (16). In its complaint, the Commission had specifically sought revocation. Under N.D.C.C. § 43–17–30.1(1), revocation of Larsen's license was an available disciplinary action for any violation of N.D.C.C. § 43–17–31. Based on the evidence, the Board determined Larsen violated not only one statutory provision, but three. Although discussion of alternative action would have been desirable, considering the number of violations and Larsen's decision to surrender his license prior to the administrative hearing, it is not unreasonable that the Board adopted the recommendation of the ALJ without discussing other available disciplinary sanctions.

[¶ 26] We therefore conclude the Board's decision to revoke Larsen's license was supported by the conclusions of law and was in accordance with the law.

**E**

[¶ 27] Larsen argues he was denied due process by the Board's failure to deliberate. He asserts the Board "rubber-stamped" the ALJ's decision and suggests the Board's lack of discussion on whether his license to practice medicine should be suspended or revoked demonstrates its decision was arbitrary.

[¶ 28] Larsen asserts "[i]t is a mystery" why the Board revoked his license instead of considering another sanction. He maintains "[t]here is nothing in the record upon which one can guess the reason Dr. Larsen's license was revoked. . . ." During the administrative hearing, however, the Commission discussed the rationale for the recommended sanction. The Commission acknowledged suspension of Larsen's license may have been appropriate if he had agreed to be evaluated

by a psychiatrist for a rehabilitation program. Following a structured rehabilitation, the Commission argued Larsen may have been able to reinstate his license by demonstrating his fitness to practice medicine to the Board. The Commission concluded "[w]e are recommending revocation at this point because Dr. Larsen not only is of default in this matter but, by letter through his attorney, specifically indicated that he is not responsible in any way for these charges."

[¶ 29] The transcript of the administrative hearing, as well as all the evidence submitted to the ALJ, was provided to the Board members for consideration prior to their meeting. There is no evidence the Board members failed to review the entire record before the Board rendered its decision. Furthermore, during the Board's meeting to discuss the ALJ's recommendation, counsel for both sides argued in support of their positions. The Commission emphasized the vulnerability of the patient, Larsen's failure to admit any wrongdoing, and the Board's responsibility to protect the public. Based on the record, Larsen was not denied due process by the Board's failure to deliberate.

### F

[¶ 30] Larsen argues he was denied due process because revocation of his license to practice medicine was an excessive sanction as a matter of law. While this sanction may be harsh, we conclude the Board did not abuse its discretion.

[¶ 31] Larsen contends revocation of his license was excessive because the sexual relationship did not occur "under the guise of treatment, as part of a physical examination, during psychiatric treatment or in exchange for drugs." Although he argues the revocation was excessive, during oral argument to the Board, when addressing the appropriate disciplinary action, he maintained no sanction was appropriate because no statutory violation had been established.

[¶ 32] Generally, if authorized by law and justified in fact, imposition of a regulatory sanction by an administrative agency is discretionary. *Steen v. North Dakota Dep't of Human Serv.*, 1997 ND 52, ¶ 24, 562

N.W.2d 83 (citing *Sletten v. Briggs*, 448 N.W.2d 607, 611 (N.D.1989), *cert. denied*, 493 U.S. 1080, 110 S.Ct. 1135, 107 L.Ed.2d 1041 (1990)); *see also Matter of Prettyman*, 410 N.W.2d 533, 537 (N.D.1987) (citing *Wisdom v. North Dakota Real Estate Comm'n*, 403 N.W.2d 19, 22 (N.D.1987)) (holding the North Dakota Real Estate Commission did not abuse its discretion in reprimanding Wisdom); *Panhandle Coop. Ass'n v. E.P.A.*, 771 F.2d 1149, 1152 (8th Cir.1985) (recognizing "[t]he assessment of a penalty is particularly delegated to the administrative agency. Its choice of sanction is not to be overturned unless 'it is unwarranted in law' or 'without justification in fact.'") (citing *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 185–86, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973)). Thus, the issue becomes whether the revocation of Larsen's license to practice medicine was authorized by law. *Wisdom*, at 22; *see, e.g., Dresser v. Board of Med. Quality Assurance*, 130 Cal.App.3d 506, 181 Cal.Rptr. 797, 804 (Cal.Ct.App.1982) (citations omitted) (noting "[t]he propriety of a penalty imposed by an administrative agency is a matter within its discretion and, absent a manifest abuse thereof, it will not be disturbed upon review by a trial or appellate court'").

[¶ 33] Both sides contend numerous decisions from other jurisdictions are persuasive on this issue. *See, e.g., Gromis v. Medical Board of California*, 8 Cal.App.4th 589, 10 Cal.Rptr.2d 452, 460 (Cal.Ct.App.1992) (reversing and remanding for further findings on whether a physician took advantage of his position in order to induce a patient into a sexual relationship and whether the physician's failure to refer the patient for counseling was related to their sexual relationship); *Dresser*, 181 Cal.Rptr. at 804 (determining the Board did not abuse its discretion when it revoked a psychologist's license for engaging in sexual relations with his patients); *Bash v. Board of Med. Practice*, 579 A.2d 1145, 1146 (Del.Super.Ct.1989) (affirming the Board's decision suspending a physician's license for one year, and permanently restricting him from treating female patients upon possible reinstatement of his license after one year); *Yero v. Department of Prof'l Regulation*, 481 So.2d 61, 63 (Fla.Dist.Ct.App. 1985) (reversing the Board's decision sus-

pending a physician's license, because after weighing the evidence, the Board based its final order on a substituted finding regarding the status of the physician/patient relationship at the time of the sexual relationship); *Solloway v. Department of Prof'l Regulation*, 421 So.2d 573, 575 (Fla.Dist.Ct.App.1982) (affirming the Board's decision to revoke a psychiatrist's license because the record supported the finding sexual activity between a psychiatrist and a patient was precluded by the profession itself); *Herridge v. Board of Registration in Med.*, 420 Mass. 154, 648 N.E.2d 745, 746 (Mass.1995) (remanding the case because the ALJ failed to explain determinations of credibility); *Palmer v. Board of Registration in Med.*, 415 Mass. 121, 612 N.E.2d 635, 638 (Mass.1993) (determining revocation was within the Board's discretion and affirming the Board's decision to revoke a psychiatrist's license with leave to petition for reinstatement after two years); *Haley v. Medical Disciplinary Bd.*, 117 Wash.2d 720, 818 P.2d 1062, 1075 (Wash.1991) (affirming the Board's decision to sanction Haley after ruling his sexual relationship with a former teenage patient constituted unprofessional conduct). None of the decisions cited concluded revocation of a physician's license to practice medicine was excessive when a statutory violation had been established.

[¶ 34] Disciplinary action may be imposed against a licensed physician for any of twenty-eight grounds under N.D.C.C. § 43–17–31. The ALJ concluded Larsen violated three of those grounds:

1. The use of any false, fraudulent, or forged statement or document, or the use of any fraudulent, deceitful, dishonest, or immoral practice, in connection with any of the licensing requirements.

6. The performance of any dishonorable, unethical, or unprofessional conduct likely to deceive, defraud, or harm the public.

16. Sexual abuse, misconduct, or exploitation related to the licensee's practice of medicine.

N.D.C.C. § 43–17–31. The ALJ cited violations of all three statutory grounds as the basis for adopting the Commission's recommendation to revoke Larsen's license. Revocation of license is one of nine available disciplinary actions under N.D.C.C. § 43–17–30.1(1). The statute leaves the choice of disciplinary action within the discretion of the Board "as it may find appropriate." Here, the Board adopted the recommendation of the ALJ revoking Larsen's license.

[¶ 35] Larsen does not dispute that revocation of his license to practice medicine was one of the sanctions available to the Board. There is nothing in the plain language of the statute or its legislative history to suggest this Court should second-guess a decision clearly within the parameters of the Board's authority. Therefore, because this sanction is authorized by law and justified in fact, we hold the Board's decision to revoke Larsen's license was not an abuse of discretion.

G

[¶ 36] Larsen next contends he was denied statutory due process because the Board proceeded on a "default" basis without complying with the provisions of N.D.C.C. § 28–32–08.4. We find Larsen's argument without merit.

[¶ 37] Despite Larsen's contention, the administrative hearing was not a default hearing subject to the technical provisions of N.D.C.C. § 28–32–08.4. Under N.D.C.C. § 28–32–08.4(1):

If a party fails to attend or participate in a prehearing conference, hearing, or other stage of a contested case administrative proceeding, the agency may serve upon all parties written notice of default and a default order, including a statement of the grounds for default.

The administrative hearing was not a default hearing as defined by the statutory language. Larsen clearly had an opportunity to attend the administrative hearing and present evidence, but chose not to attend, or have his attorney attend. We therefore conclude Larsen was not denied statutory due process.

H

[¶ 38] Larsen contends the Board acted without authority because he previously resigned his license to practice medicine in

**810**

North Dakota. We conclude this argument is without merit as well.

[¶ 39] Larsen correctly acknowledges N.D.C.C. § 43–17–30.1 authorizes the Board to take action against any "licensed physician." He asserts because he resigned his license on August 4, 1997, the Commission did not have authority over his license after that date. In response, the Commission contends:

> The Board had not even met to consider his resignation. However, it has always been the practice of the Board to exercise its responsibility in disciplinary actions, although a physician may want to tender his license in order to abort the process. There is no doubt, based upon the actions and arguments of Larsen subsequent to the hearing that he may want his license returned. Thus, had the Board not taken any action, it would be its duty to return the license to Larsen absent any finding of discipline or the imposition of any sanctions pursuant to the North Dakota Medical Practice Act, N.D.C.C. Ch. 43–17, and the Administrative Practices Act, N.D.C.C. 28–32.

Larsen was still a licensed physician at the time of the Board's meeting on August 19, 1997. We therefore conclude the Board acted with authority when deciding to revoke Larsen's license.

**I**

[¶ 40] Larsen argues the district court erred by denying his motion for leave to offer additional exhibits under N.D.C.C. § 28–32–18. Because Larsen had an opportunity to attend the administrative hearing and present evidence, the trial court did not err in denying Larsen's motion for leave.

[¶ 41] While his appeal was pending in the district court, Larsen moved for leave to offer additional evidence. He argues his deposition testimony and the deposition testimony of the patient taken during the course of a related civil action was "omitted testimony" relevant to the district court's review. He asserts "[t]he depositions taken in the related civil action bore directly upon the issue of whether the relationship was abusive, exploitative, or related to Dr. Larsen's

practice of medicine." The district court denied Larsen's motion for leave, stating there was "no showing of reasonable grounds for failure to offer the evidence in the hearing."

[¶ 42] "Under N.D.C.C. § 28–32–18 a party may apply to the court in which an appeal is pending for leave to offer additional evidence. If the court finds the additional evidence is material and there were reasonable grounds for the failure to adduce the evidence at the administrative hearing, the court may order the additional evidence be taken, heard and considered on terms and conditions as it deems proper." *Otto v. North Dakota Workers Comp. Bureau*, 533 N.W.2d 703, 705 (N.D.1995) (citing N.D.C.C. § 28–32–18; *Insurance Serv. Office v. Knutson*, 283 N.W.2d 395, 400 (N.D.1979); *Nohr v. North Dakota Workers Comp. Bureau*, 419 N.W.2d 545, 546–47 (N.D.Ct.App.1988)). Neither the district court nor this Court may consider evidence not submitted to the agency. *Id.* (citing *Knutson v. North Dakota Workmen's Comp. Bureau*, 120 N.W.2d 880, 882–83 (N.D.1963)).

[¶ 43] Regardless of whether the deposition testimony is relevant, Larsen failed to prove reasonable grounds for the failure to adduce the evidence at the administrative hearing as required under N.D.C.C. § 28–32–18. The record indicates Larsen and his counsel chose not to attend the administrative hearing. Having elected not to attend the hearing, Larsen cannot maintain the district court erred in denying his motion for leave. We therefore affirm the district court's denial of Larsen's motion.

**IV**

[¶ 44] The decision of the North Dakota Board of Medical Examiners revoking Larsen's license to practice medicine is affirmed.

[¶ 45] VANDE WALLE, C.J., NEUMANN, J., and MAURICE R. HUNKE, District Judge, concur.

[¶ 46] MAURICE R. HUNKE, District Judge, sitting in place of MARING, J., disqualified.

[¶ 47] The Honorable HERBERT L. MESCHKE, a member of the Court when this case was heard, retired effective October 1, 1998, and did not participate in this decision.

[¶ 48] The Honorable CAROL RONNING KAPSNER was not a member of the Court when this case was heard and did not participate in this decision.