603 N.W.2d 176 (1999)
1999 ND 229
In the Matter of Application of DISCIPLINARY ACTION AGAINST Mary E. SEAWORTH, a Member of the Bar of the State of North Dakota.
Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner,
v.
Mary E. Seaworth, Respondent.
No. 990195.
Supreme Court of North Dakota.
December 6, 1999.
*177 Paul W. Jacobson, Disciplinary Counsel, Bismarck, N.D., for petitioner.
Shirley A. Dvorak of Moosbrugger, Dvorak & Carter, Grand Forks, N.D., for respondent.
PER CURIAM.
[¶ 1] Mary E. Seaworth appeals from an order reprimanding her for violating N.D.R. Prof. Conduct 1.3 and 1.4, and ordering her to pay $3,507.25, the costs and expenses of the disciplinary proceedings. We conclude there is clear and convincing evidence Seaworth violated N.D.R. *178 Prof. Conduct 1.3. We further conclude there is not clear and convincing evidence Seaworth violated N.D.R. Prof. Conduct 1.4.

I
[¶ 2] A former client of Seaworth's, Beverly Motl, initiated this proceeding by a complaint against Seaworth, who has been a member of the North Dakota bar since April 16, 1984. Motl retained Seaworth in late 1992 to represent her regarding a workers compensation claim. Seaworth's representation of Motl lasted until May of 1995.
[¶ 3] Motl's complaint alleged Seaworth did not inform her of a settlement offer from the North Dakota Workers Compensation Bureau. In addition, the petition for discipline alleged Seaworth had not diligently responded on Motl's behalf to communications from the Bureau.
[¶ 4] Seaworth denied inadequately representing Motl. Seaworth argues she communicated all offers to Motl and told Ken Sorenson of the Bureau in telephone conversations the offers were not acceptable. Seaworth testified any notes she would have made regarding telephone conversations with the Bureau or Motl would have been on her time sheets, which were lost when her Grand Forks law office flooded in April of 1997. Further, Seaworth claims she was never authorized to accept offers on Motl's behalf.
[¶ 5] Motl testified that not until May 6, 1994, was she notified of a January 14, 1993, offer of $7,382 from the Bureau. Motl testified that once she found out about the offer, she "wanted more" money to settle her case. Seaworth testified she told Sorenson over the telephone the $7,382 offer was not acceptable and Motl was going to pursue an additional claim against the Bureau for psychological damages.
[¶ 6] During the investigation by the disciplinary board, Seaworth produced Motl's file, which had been damaged in the 1997 flood, and photos of the water-damaged file. Seaworth produced a letter, dated January 22, 1993, allegedly from Motl's file. The letter, also damaged by the flood, was addressed to Motl and notified her of the Bureau's offer. Seaworth testified she sent this letter, along with a copy of the Bureau's settlement offer, to Motl in January of 1993.
[¶ 7] Seaworth testified she does not remember whether she responded to letters of August 2, 1993, or September 1, 1993, from the Bureau.
[¶ 8] Seaworth testified an offer of $2,000 was made on November 29, 1993, but it was rejected by Motl. Seaworth claims Sorenson's November 29, 1993, letter was in response to a telephone conversation between the two in which she requested he set out the Bureau's current position. Accordingly, she claimed, the November 29, 1993, letter did not merit a response.
[¶ 9] Regarding a January 19, 1994, letter, Seaworth claims she did not respond in writing, but talked to Sorenson about it several times on the telephone.
[¶ 10] On March 15, 1994, Sorenson wrote to Seaworth, stating he had not received a response to his previous letters, copies of which he enclosed. Seaworth claims she had telephone conversations with Sorenson both before and after the March 15, 1994, letter.
[¶ 11] On April 25, 1994, Sorenson sent a letter to Seaworth stating, "I have received no response to my numerous letters.... In order to continue the processing to this claim, it is necessary that you respond to my letter."
[¶ 12] Sorenson's letters of January 19, March 15, and April 25, 1994, indicate Seaworth had not responded to the November 29, 1993, offer. Seaworth argues his correspondence referred to the fact Sorenson wanted her to respond with a counteroffer, which she claimed she was unauthorized to give.
*179 [¶ 13] On March 2, 1995, Sorenson wrote to Seaworth:
I last wrote to you in October of 1994, which was a reminder or follow-up letter to a September 26, 1994, letter ... you indicated that you would get back to me... there has not been any formal response from you. I am not sure what more I can do to resolve this matter.
Seaworth testified she telephoned Sorenson and told him she did not have a response.
[¶ 14] On April 4, 1995, Sorenson sent a letter to Seaworth stating he was following up on his letters of September and October of 1994, a subsequent telephone call from Motl, telephone conversations between Sorenson and Seaworth, and his March 2, 1995, letter. The April 4, 1995, letter stated, "I really think that on behalf of your client, you should respond."
[¶ 15] In a May 8, 1995, letter to Seaworth, the Bureau's claims supervisor wrote, "Attached is a copy of a letter dated April 4, 1995 ... a response has not been received. Don't you plan on making any response?"
[¶ 16] In a June 1, 1995, letter to Motl, the Bureau's unit supervisor wrote, "The Bureau has made numerous attempts to resolve your claim through your attorney, but your attorney has never responded to any of the correspondence."
[¶ 17] Seaworth claims the way she handled responses to Sorenson's letters was part of a strategy for Motl's benefit. She also asserts Motl was an unresponsive client who did not know what she wanted and could not make decisions. Seaworth claims she did everything she could to work with Motl, but Motl refused to give access to psychological information needed to pursue her psychological claim against the Bureau. During Seaworth's representation of her, Motl received mail at two different addresses. Motl contacted the Bureau several times while Seaworth was representing her.
[¶ 18] Motl admitted she was under treatment for psychological difficulties when Seaworth undertook representation of her. During Seaworth's representation, Motl may have been taking a tranquilizer, Tranxene, which may cause memory loss if the medication is abruptly discontinued. Motl denied suffering memory loss from taking Tranxene. She receives social security disability benefits due to her work injuries and, in part, due to her psychological disability.
[¶ 19] Seaworth has been disciplined on two prior occasions: October 6, 1995, and February 13, 1997. In both instances, Seaworth received an admonition from the inquiry committee.
[¶ 20] On May 1, 1998, Seaworth was served with a summons and petition for discipline alleging violations of N.D.R. Prof. Conduct 1.3 and 1.4. The matter was assigned to a hearing body, and the hearing body filed its findings and recommendations on April 29, 1999. The hearing body found Seaworth received sixteen letters from the Bureau to which she did not respond. The hearing body also found her failure to respond to at least thirteen of the letters prejudiced Motl's case. The hearing body found Seaworth had not made a reasonable effort to keep Motl informed about the status of her claim, and concluded Seaworth violated N.D.R. Prof. Conduct 1.3 and 1.4.
[¶ 21] The hearing body recommended Seaworth be issued a reprimand and pay all costs of the disciplinary proceedings. The disciplinary board adopted the findings and recommendations, and ordered Seaworth be issued a reprimand and pay $3,507.25, the costs and expenses of the disciplinary proceedings.
[¶ 22] Seaworth timely filed her objections to the order under N.D.R. Lawyer Discipl. 3.1(F)(2). The disciplinary board had jurisdiction under N.D.R. Lawyer Discipl. 3.1(E). This Court has jurisdiction under N.D.R. Lawyer Discipl. 3.1(F).

*180 II
[¶ 23] This Court reviews disciplinary proceedings de novo on the record under a clear and convincing standard of proof. Disciplinary Bd. v. Leier, 1997 ND 79, ¶ 3, 562 N.W.2d 741. We give "due weight to the findings, conclusions, and recommendations of the Disciplinary Board." Disciplinary Bd. v. Landon, 1999 ND 202, ¶ 10, 600 N.W.2d 856 (citing Leier, at ¶ 3). We do not, however, act as a mere "rubber stamp" for those findings and recommendations. Id. Each disciplinary case must be considered upon its own facts to decide what discipline is warranted. Leier, at ¶ 3 (citing Disciplinary Bd. v. Nassif, 547 N.W.2d 541, 542 (N.D.1996)).

A
[¶ 24] The issue in this case is whether there is clear and convincing evidence Seaworth violated N.D.R. Prof. Conduct 1.3 and 1.4. "Disciplinary counsel bears the burden of proving each alleged violation of the disciplinary rules by clear and convincing evidence." Disciplinary Bd. v. Dooley, 1999 ND 184, ¶ 28, 599 N.W.2d 619 (citing Disciplinary Bd. v. Larson, 485 N.W.2d 345, 348 (N.D.1992)).

1
[¶ 25] The hearing body found Seaworth failed to respond to sixteen letters from the Bureau regarding Motl's claim. Seaworth argues she did not have a duty to respond to opposing counsel's correspondence. Rule 1.3, N.D.R. Prof. Conduct, imposed a duty on Seaworth to respond to the Bureau's communications if her response would have protected Motl's interests. "Perhaps no professional shortcoming is more widely resented than procrastination." N.D.R. Prof. Conduct 1.3 cmt. The Comment to Rule 1.3 further states "[a] client's interests often can be adversely affected by the passage of time or the change of conditions," thus "a lawyer should carry through to conclusion all matters undertaken for a client."
[¶ 26] The hearing body found Seaworth's failure to respond "prejudiced Motl's case with respect to obtaining an appropriate settlement." Assistant disciplinary counsel argues Motl was prejudiced because, as of the date of oral argument, Motl's claim against the Bureau had been continuing for twelve years and was still unresolved. Seaworth claims the fact Motl's claim remains unresolved is due to circumstances beyond her control. Seaworth argues that because she only represented Motl for a portion of the twelve-year period and because Motl rejected the Bureau's settlement offers and refused to cooperate with Seaworth regarding her psychological claim, Motl's unresolved claim cannot solely be attributed to her.
[¶ 27] Assistant disciplinary counsel also argues Motl was injured as a result of Seaworth's failure to respond to the Bureau's letters because her lack of response caused Motl anxiety and undermined her trust in Seaworth.
[¶ 28] From our review of the record, it is unclear whether Motl was in fact prejudiced by Seaworth's failure to respond on her behalf. Rule 1.3, N.D.R. Prof. Conduct, does not require a client to be prejudiced by his or her lawyer's failure to act with reasonable diligence and promptness for a violation of the rule to occur. "Even when the client's interests are not affected in substance ... unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness." N.D.R. Prof. Conduct 1.3 cmt.
[¶ 29] A lawyer is required to "act with reasonable diligence and promptness in representing a client." N.D.R. Prof. Conduct 1.3. The record shows clear and convincing evidence Seaworth did not respond on Motl's behalf to the Bureau's inquiries. The Bureau's letters show she was neither diligent nor prompt in her responses on behalf of Motl. The disciplinary board's finding her failure to respond on Motl's behalf to at least thirteen of the *181 Bureau's letters is supported by clear and convincing evidence.

2
[¶ 30] The hearing body found Seaworth did not make a reasonable effort to keep Motl informed about the status of her claim, in violation of N.D.R. Prof. Conduct 1.4. Motl's complaint and subsequent disciplinary proceeding center around whether Seaworth notified Motl about the Bureau's offer of $7,382. Rule 1.4, N.D.R. Prof. Conduct, "requires a lawyer to make reasonable efforts to keep a client reasonably informed, to promptly comply with requests for information, and to explain matters to the extent reasonably necessary." Disciplinary Bd. v. Ellis, 504 N.W.2d 559, 564 (N.D.1993). "A lawyer who receives from opposing counsel an offer of settlement in a civil controversy... should promptly inform the client of its substance unless prior discussions with the client have left it clear that the proposal will be unacceptable." N.D.R. Prof. Conduct 1.4 cmt.
[¶ 31] It seems fairly certain Seaworth mailed the letter giving notice of the $7,382 offer to Motl, as evidenced by the flood-stained letter. Motl does not remember receiving the letter; however, she testified she did remember reading it, possibly at Seaworth's office. Motl was receiving her mail at two different addresses at the time Seaworth allegedly mailed the notice of the settlement offer, but Motl claims mail sent to one address would have been forwarded to the other.
[¶ 32] It is unclear from the findings of fact of the hearing body, which were adopted by the disciplinary board, whether the disciplinary board concluded Motl received notification of the $7,382 offer. Findings of fact must be adequate to enable a reviewing court to ascertain the basis of the disciplinary board's decision. See Larsen v. Comm'n on Med. Competency, 1998 ND 193, ¶ 14, 585 N.W.2d 801. To aid us in our review of the disciplinary board's conclusions, clear and specific findings of fact are necessary.
[¶ 33] From the record, it is uncertain whether Seaworth timely communicated the Bureau's additional settlement offers to Motl. Attorneys should well document contacts with clients, including telephone calls. See generally Disciplinary Bd. v. Nassif, 504 N.W.2d 311, 312-14 (N.D.1993); Disciplinary Bd. v. Lovell, 292 N.W.2d 76 (N.D.1980). Seaworth, while maintaining she informed Motl of the offers, testified any notes she may have had corroborating these communications were on time sheets lost in the 1997 flood.
[¶ 34] We disagree with the disciplinary board's finding Seaworth failed to adequately communicate with Motl. There was some evidence presented indicating Seaworth violated N.D.R. Prof. Conduct 1.4, but the evidence does not rise to the level of clear and convincing. We conclude the assistant disciplinary counsel did not establish by clear and convincing evidence Seaworth failed to make reasonable efforts, in violation of N.D.R. Prof. Conduct 1.4, to keep Motl reasonably informed of the status of her claim.

B
[¶ 35] In determining the appropriate sanction for a violation of the Rules of Professional Conduct, this Court is directed by the North Dakota Standards for Imposing Lawyer Sanctions. Disciplinary Bd. v. Landon, 1999 ND 202, ¶ 21, 600 N.W.2d 856 (citing Disciplinary Bd. v. Nassif, 547 N.W.2d 541, 544 (N.D.1996)). Under N.D. Stds. Imposing Lawyer Sanctions 4.43, "[r]eprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client." An admonition is ordinarily appropriate "when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes little or no actual or potential injury to a client." N.D. Stds. Imposing Lawyer Sanctions 4.44.
*182 [¶ 36] Under N.D. Stds. Imposing Lawyer Sanctions 3.0(d), this Court "should consider ... the existence of aggravating or mitigating factors" when prescribing a sanction after a finding of lawyer misconduct. Rule 9.22(a), N.D. Stds. Imposing Lawyer Sanctions, provides whether a lawyer has had prior disciplinary offenses is a factor that may be considered in aggravation. Seaworth has been disciplined twice before for violations of N.D.R. Prof. Conduct. Accordingly, we conclude a reprimand is appropriate in this case.

III
[¶ 37] We agree with the disciplinary board's conclusion Seaworth violated N.D.R. Prof. Conduct 1.3. We do not agree with the disciplinary board's conclusion Seaworth violated N.D.R. Prof. Conduct 1.4. We therefore order Seaworth be reprimanded for violating N.D.R. Prof. Conduct 1.3, and pay $3,507.25 in costs and expenses to the Secretary of the Disciplinary Board.
[¶ 38] WILLIAM A. NEUMANN, ACTING C.J., DALE V. SANDSTROM, MARY MUEHLEN MARING, JJ., BRUCE B. HASKELL, D.J., RICHARD W. GROSZ, D.J., concur.
[¶ 39] BRUCE B. HASKELL, D.J., and RICHARD W. GROSZ, D.J., sitting in place of VANDE WALLE, C.J., and KAPSNER, J., disqualified.