637 N.W.2d 710 (2001)
2001 ND 210
In the Matter of the Application for DISCIPLINARY ACTION AGAINST John V. BOULGER, a Member of the Bar of the State of North Dakota.
Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner,
v.
John V. Boulger, Respondent.
No. 20010093.
Supreme Court of North Dakota.
December 31, 2001.
*711 Paul W. Jacobson, Bismarck, ND, for petitioner.
Timothy G. Richard and Ronald H. McLean (argued), Serkland Law Firm, Fargo, ND, for respondent.
PER CURIAM.
[¶ 1] Disciplinary counsel filed a petition for discipline against John V. Boulger, alleging multiple violations of the North Dakota Rules of Professional Conduct. Boulger contested the allegations of misconduct and was granted a hearing before a hearing panel. The hearing panel concluded Boulger had committed no act in violation of the professional conduct rules and ordered the petition against him be dismissed. Under N.D.R. Lawyer Discipl. 3.1(f), disciplinary counsel petitioned this Court for review of the hearing panel's order. This Court granted the petition for review only for the alleged violation of N.D.R. Prof. Conduct 1.8(c). We hold Boulger violated Rule 1.8(c) by drafting a codicil and a will for a client including provisions giving himself a substantial contingent testamentary gift. We issue this opinion as a reprimand of Boulger's misconduct and remand for assessment of costs to be determined by the Disciplinary Board.

I
[¶ 2] The facts in this case are not in dispute. Boulger was a high school classmate and friend of Jay Swanson, who owned and operated Swanson Health Products and other businesses in Fargo. Boulger provided legal services for Swanson and his businesses. In 1992, Swanson, his wife, and his two teenage sons planned a seven-day trip to Jamaica. Before leaving on the trip, Swanson requested Boulger prepare a codicil to his will providing that in the event the entire family were to die during the trip, Jay Swanson's estate would be divided between his former wife, his brother, and specific friends, including Boulger. Under that codicil, if all contingencies were met, Boulger could have received one-third of twenty five percent of Swanson's estate. The codicil was self-terminating and none of its provisions were implemented.
[¶ 3] In 1993, at Jay Swanson's request, Boulger prepared a new will bequeathing Swanson's estate to his two sons and providing that, in the event the sons should predecease Swanson and leave no living issue, Boulger would receive twenty percent of the estate. Jay Swanson subsequently executed a new will, and upon his death in November 1996, Boulger did not receive any property from the estate.

II
[¶ 4] Upon the complaint of Jay Swanson's brother, disciplinary counsel filed a petition for discipline against Boulger alleging, among other things, Boulger's drafting of the 1992 codicil and the 1993 will violated N.D.R. Prof. Conduct 1.8(c), which provides:
A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, unless the client is related to the donee.
The Official Comment to this rule explains its intent:
A lawyer may accept a gift from a client, if the transaction meets general standards of fairness. For example, a simple gift such as a present given at a holiday or as a token of appreciation is *712 permitted. If effectuation of a substantial gift requires preparing a legal instrument such as a will or conveyance, however, the client should have the detached advice that another lawyer can provide. Paragraph (c) recognizes an exception where the client is a relative of the donee or the gift is not substantial.
[¶ 5] We review disciplinary proceedings against attorneys de novo on the record. In re Disciplinary Action Against Howe, 2001 ND 7, ¶ 4, 621 N.W.2d 361. Disciplinary counsel must prove each violation by clear and convincing evidence. Id. We decide each case on its own facts and, although we give due weight to the findings, conclusions, and recommendations of the Disciplinary Board, we do not automatically accept those findings. In re Disciplinary Action Against Dooley, 1999 ND 184, ¶ 12, 599 N.W.2d 619.

III
[¶ 6] Boulger concedes he drafted will instruments for his client, Jay Swanson, which provided testamentary devises to himself. Boulger also concedes that had he inherited property under either of those contingent devises he would have received a substantial gift, amounting to perhaps hundreds of thousands of dollars, because Swanson was a successful businessman with substantial assets. Nevertheless, Boulger argues, and the Disciplinary Board's hearing panel concluded, Boulger's drafting of the will instruments did not violate Rule 1.8(c) because the contingencies to trigger the testamentary gifts to Boulger were so unlikely to happen that it was improbable Boulger would receive anything under the will instruments and, consequently, the contingent bequests did not constitute substantial gifts to Boulger. We disagree.
[¶ 7] Rule 1.8(c) expressly forbids an attorney from drafting an instrument for a client which gives the attorney a substantial gift, and the official comment makes clear the intent of the rule is to insure the client receives "detached advice" from a lawyer with no interest in the matter. Although the rule does not define "substantial gift," we find guidance in other cases interpreting similar rules, wherein the courts have concluded that a gift is not rendered insubstantial merely because it is contingent.
[¶ 8] The Supreme Court of Indiana in In the Matter of Watson, 733 N.E.2d 934, 936 (Ind.2000), applying a similar rule of attorney conduct, concluded that when a legal document has "the potential for providing a substantial testamentary gift" to an attorney, that attorney should not draft the instrument. Watson, an attorney practicing in Indiana, drafted a will for a client who owned stock in a telephone company for which Watson served as director, president of its board of directors, and as its general counsel. Watson also owned a share of stock in the company and his mother was beneficiary of a trust which controlled 92 shares of stock in the company. The will drafted by Watson allowed the telephone company to purchase the client's stock upon his death at the stated "book value." When the client died the company purchased the stock at book value of $9,500 per share. About two years later the company sold the stock for $21,000 per share, realizing a substantial gain.
[¶ 9] Indiana's disciplinary commission brought proceedings against Watson, alleging he violated the professional rules of conduct by drafting a legal document for a client which he should have known had the potential of providing a substantial gift to himself and to his mother and which constituted, therefore, an impermissible conflict *713 of interest. The disciplinary commission argued the book value of the stock was substantially less than its market value when the instrument was drafted, but Watson argued the book value at that time was equal to or greater than the fair market value. The Indiana Supreme Court held the attorney's conduct constituted a violation of the professional rules of conduct and explained:
We find that the mere potential for the shares' book value to be less than the fair market value created a situation that should have precluded the respondent from accepting employment as the testator's attorney to draft the codicils. Indiana Professional Conduct Rule 1.8(c) provides that a lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as a parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee. At that time, the respondent knew or should have known that the codicils had the potential for providing a substantial testamentary gift to himself or his mother....
Where it is possible, as it was here, that a testamentary gift has the potential substantially to benefit the drafting attorney or his family, the ethical propriety of drafting the instrument should be evaluated in light of reasonably foreseeable circumstances and not the capriciousness of market values years in the future. Because the respondent drafted the codicils when it was reasonably foreseeable that the instruments had the potential for providing a substantial gift to the respondent and his mother, the respondent violated Prof.Cond.R. 1.8(c).
Watson, 733 N.E.2d at 936-37.
[¶ 10] In The Florida Bar v. Miller, 555 So.2d 854, 855 (Fla.1990), the Florida Supreme Court concluded that an attorney violated professional conduct rules by drafting a will making himself a contingent beneficiary to an estate, in the event the testator's wife, who was "somewhat younger" than the testator, should predecease the testator. The Florida Supreme Court concluded the attorney's conduct in drafting the will constituted "serious" misconduct, and the court issued a public reprimand as a sanction for the attorney's wrongdoing.
[¶ 11] The intent of Rule 1.8(c) is to have clients get independent advice before executing legal documents which give their attorneys a substantial gift. In our view, a contingent devise of twenty percent of a sizeable estate, potentially amounting to receipt of thousands of dollars to the drafting attorney, constitutes a substantial gift for purposes of the rule. Although Boulger argues it was unlikely both of Jay Swanson's sons would predecease him, without issue, and therefore the gift has to be considered not to be substantial, we do not view the rule as inviting a debate about probabilities and foreseeability. If there is a potential for receiving a substantial gift, the rule indicates a lawyer should not participate in drafting a document that creates such potential. Rule 1.8(c) prohibited Boulger from drafting the 1992 codicil and the 1993 will. Boulger should have urged Swanson to seek independent advice from another lawyer, and Boulger's drafting of the instruments constituted professional misconduct.
[¶ 12] This Court in Disciplinary Board v. Amundson, 297 N.W.2d 433, 442 (N.D.1980), admonished lawyers "do not draft wills in which they are named as beneficiary." Unless the lawyer is related to the testator, that admonition clearly still applies. If a client insists upon including an unrelated attorney as a beneficiary under a will or other legal instrument, the attorney, rather than guessing whether *714 the bequest is substantial or not, should refrain from drafting the instrument and should direct his client to seek the advice of another attorney.

IV
[¶ 13] At the hearing, Boulger introduced "expert testimony" that Boulger's conduct in drafting the will did not violate Rule 1.8(c). Disciplinary counsel asks this Court on review to rule that such testimony, regarding the appropriate interpretation of the rules of professional conduct, is never admissible in disciplinary proceedings. In resolving a similar issue in In re Disciplinary Action Against Howe, 2001 ND 7, ¶¶ 6-7, 621 N.W.2d 361, this Court ruled that, in determining if the professional conduct rules have been violated, expert testimony is unnecessary if it will not assist the disciplinary hearing panel in understanding the evidence or in deciding a fact in issue. See Hawkins v. Commission for Lawyer Discipline, 988 S.W.2d 927, 936 (Tex.App.1999), cert. denied, 529 U.S. 1022, 120 S.Ct. 1426, 146 L.Ed.2d 317 (2000) (concluding, in a disciplinary proceeding where the interpretation of the rules of conduct and whether certain conduct violates the rules are at issue, but the standard of care is not at issue, there is no need for expert witness testimony). We conclude the expert witness testimony presented in this case was inappropriate, and this Court, in its de novo review, will ignore it.

V
[¶ 14] For Boulger's misconduct, disciplinary counsel requests this Court to impose a public reprimand, under N.D. Stds. Imposing Lawyer Sanctions 4.33, which provides:
Reprimand is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client. The issuance of a private reprimand[1] should be limited to cases of negligence which cause no serious injury or little or no injury to a client. A public reprimand is not a sufficiently harsh sanction in an instance where the lawyer's negligence causes substantial injury to a client.
[¶ 15] Under this standard a private reprimand appears to be the most appropriate sanction. Boulger's misconduct did not result in injury to his client. The standards for imposing lawyer sanctions also provide for consideration of aggravating and mitigating circumstances under N.D. Stds. Imposing Lawyer Sanctions 9.2 and 9.3. There are considerable mitigating circumstances in Boulger's favor. Boulger has practiced law in this state for many years and has no prior disciplinary record or history of prior misconduct. While Boulger acknowledges having drafted the instruments with contingent devises to himself, he has made full and free disclosure of the circumstances of this case to the Disciplinary Board and has been cooperative throughout the proceedings.
[¶ 16] Under these circumstances, an admonition would have perhaps been the most appropriate sanction. However, as we recognized in Disciplinary Board v. *715 Amundson, 297 N.W.2d 433, 444 (N.D. 1980), it is not possible for this Court to issue a private reprimand. An admonition which is nonpublic discipline under N.D. Stds. Imposing Lawyer Sanctions 2.5 is a sanction to be issued by the district inquiry committees under N.D.R. Lawyer Discipl. 2.4 (E)(3), not by this Court. Instead, we shall allow this opinion to serve as the sanction of reprimand.
[¶ 17] In addition, assessment of costs is an appropriate sanction under N.D. Stds. Imposing Lawyer Sanctions 2.7(b). Disciplinary counsel concedes that most of the time expended in these disciplinary proceedings involved a "fact intensive" issue on an alleged violation not accepted for review by this Court. Consequently, disciplinary counsel has requested that a partial assessment of costs be imposed against Boulger. We agree that under these circumstances a partial assessment of costs is appropriate, and we order that Boulger pay the expenses of the disciplinary proceedings in an amount the Disciplinary Board determines Boulger, in fairness, should be held responsible.

VI
[¶ 18] We hold John V. Boulger violated N.D.R. Prof. Conduct 1.8(c) by drafting instruments for a client under which he was the donee of a substantial, though contingent, gift and we issue this opinion as a reprimand for that misconduct. We also remand to the Disciplinary Board for assessment of costs to Boulger.
[¶ 19] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, WILLIAM A. NEUMANN, JJ., LAURIE A. FONTAINE, D.J., concur.
[¶ 20] The Honorable LAURIE A. FONTAINE, D.J., sitting in place of MARING, J., disqualified.
SANDSTROM, Justice, concurring.
[¶ 21] I write separately to note that this decision goes further than any other decision in the United States in proscribing lawyer conduct under a disciplinary rule such as we have in North Dakota.
[¶ 22] On two occasions, Jay Swanson specifically directed his attorney, John Boulger, to write into Swanson's will or codicil bequests to Boulger to be received only if unlikely contingencies were to occur.
[¶ 23] On the first occasion, Boulger would have received a bequest if Swanson's entire family had died on a particular trip. On the second occasion, Boulger would have received a bequest if Swanson's children had died before their father, with no heirs of their own.
[¶ 24] The Florida case, The Florida Bar v. Miller, 555 So.2d 854, 855 (Fla. 1990), is the only contingent-beneficiary disciplinary case that has been found after diligent search. Under the Florida case, the lawyer was to inherit if the somewhat younger spouse were to die first. Most adults probably know personally of couples in which the somewhat younger spouse has died first. Many may have heard of entire families being killed in a single accident, but how many personally have known such a family? Probably all have heard of persons winning the lottery, but how many can say they have personally known someone who won the lottery?
[¶ 25] Not all contingencies are equally likely to occur. The contingencies of Jay Swanson's codicil and will were always unlikely to occur, and did not occur.
[¶ 26] There is absolutely no evidence of the lawyer overreaching or exerting undue influence, as the disciplinary rule is designed to prevent. ABA/BNA Lawyer's Manual on Professional Conduct 51:601 to 51:602 (2001); Charles W. Wolfram, Modern *716 Legal Ethics 486-87 (1986). Jay Swanson was an alert, successful businessman in his forties when his lawyer, Boulger, at Swanson's initiative and specific direction, included the contingent bequests.
[¶ 27] This opinion demonstrates that a lawyer is not always protected by following the client's specific directions.
[¶ 28] This opinion stands for the proposition that a contingency to receive a substantial gift is a substantial gift under the rule, and it makes no difference how unlikely the contingency is to occur. On careful reflection, I concur, concluding this interpretation is the appropriate one necessary to protect the public in the future.
[¶ 29] While John Boulger, concededly a fine lawyer with an otherwise unblemished record, is the nominal subject of the Court's action, the real admonition is to all lawyers: a bright line has been drawn and is not to be crossed.
[¶ 30] Dale V. Sandstrom
NOTES
[1] Under N.D. Stds. Imposing Lawyer Sanctions 2.4 the term "reprimand" is defined as "a form of public discipline." Under N.D. Stds. Imposing Lawyer Sanctions 2.5 the term "admonition" is defined as "a form of non-public discipline." Although N.D. Stds. Imposing Lawyer Sanctions 4.33 refers to issuing a "private reprimand," it is essentially suggesting that an admonition should issue in cases of negligence which caused no serious injury or little or no injury to a client.