2003 ND 22

In the Matter of the Application for DISCIPLINARY ACTION AGAINST William E. McKECHNIE, a Member of the Bar of the State of North Dakota.

Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner,

v.

William E. McKechnie, Respondent.

No. 20020194.

Supreme Court of North Dakota.

Feb. 19, 2003.

Loralyn K. Hegland, Assistant Disciplinary Counsel, Bismarck, ND, for petitioner.

James S. Hill, Zuger Kirmis & Smith, Bismarck, ND, for respondent.

PER CURIAM.

[¶1] William E. McKechnie and Disciplinary Counsel have filed objections to a

hearing panel's report and order of discipline suspending McKechnie from the practice of law for 30 days and ordering he pay costs of the disciplinary proceedings for his violation of N.D.R. Prof. Conduct 1.1 and 1.4(b). We conclude there is clear and convincing evidence McKechnie violated N.D.R. Prof. Conduct 1.4(b), and we order that he be publicly reprimanded and pay the costs of the disciplinary proceedings in the amount of $5,375.59.

I

[¶2] McKechnie was admitted to practice law in North Dakota on October 5, 1981. On January 5, 1996, Dennis Follman retained McKechnie to investigate a possible discrimination or sexual harassment lawsuit he might have against his former employer, Upper Valley Special Education Unit ("Upper Valley"). McKechnie told Follman the statute of limitations on his claim would be three years from the date of Follman's June 2, 1995 resignation from Upper Valley. McKechnie had Follman sign an authorization so McKechnie could obtain Follman's personnel file from Upper Valley. At that time, Follman paid McKechnie $1,500, which McKechnie categorized in his records as $500 for costs and $1,000 for a retainer. No written fee agreement between McKechnie and Follman was executed.

[¶3] McKechnie met with Follman in February 1996 and again told him he had three years from the date of his resignation to commence the lawsuit. Follman told McKechnie he was not ready to file the lawsuit at that time because "I wanted to take a look at some medical concerns ... and I didn't want to have a conflict between the sexual harassment claim and the medical one at the time."

[¶4] On October 10, 1996, McKechnie sent Follman a $500 check noted "retainer

refund," but the check was unaccompanied by an explanatory letter. On January 17, 1997, Follman sent a letter to McKechnie requesting an itemized billing for the $1,000 he had paid in 1996. Follman also informed McKechnie he anticipated that McKechnie could still represent him in his lawsuit against his former employer and that he had not hired another attorney. Following the April 1997 Grand Forks flood, McKechnie wrote Follman a letter on June 16, 1997, stating:

> It has been several months since we heard from you and I would like to touch base with you with regard to representation of your claim. We have now reach [sic] a sense of normalcy in Grand Forks and I am ready to proceed on your behalf. Please contact me at your earliest convenience to discuss.

In May 1998, Follman wrote a letter to McKechnie advising him that he wanted to resume his case against Upper Valley. McKechnie and Follman then entered into a written fee agreement providing for a contingent fee if a recovery was obtained in the sexual harassment case.

[¶ 5] In late May 1998, Follman sued Upper Valley. The trial court dismissed the lawsuit, concluding Follman's claims were barred by the three-year statute of limitations because Follman discovered the facts which formed the basis of his claim in January 1995. This Court affirmed in *Follman v. Upper Valley Special Educ. Unit*, 2000 ND 72, 609 N.W.2d 90.

[¶ 6] A petition for discipline was filed against McKechnie in June 2001. Following a hearing, the hearing panel found McKechnie violated N.D.R. Prof. Conduct 1.1, which states that a lawyer shall provide competent representation, and N.D.R. Prof. Conduct 1.4(b), which states that a lawyer shall explain matters related to the representation to the extent reasonably necessary to permit the client to make

informed decisions. The panel recommended that McKechnie be suspended from the practice of law for 30 days and that he pay the costs of the disciplinary proceedings. McKechnie and Disciplinary Counsel filed objections with this Court.

## II

[¶ 7] We review disciplinary proceedings de novo on the record. *In re Disciplinary Action Against Howe*, 2001 ND 86, ¶ 6, 626 N.W.2d 650. We accord due weight to the findings, conclusions, and recommendations of the hearing panel, but we do not act as a mere "rubber stamp." *In re Disciplinary Action Against McDonald*, 2000 ND 87, ¶ 13, 609 N.W.2d 418. Disciplinary counsel bears the burden of proving each alleged violation of the disciplinary rules by clear and convincing evidence. *In re Disciplinary Action Against Seaworth*, 1999 ND 229, ¶ 24, 603 N.W.2d 176. Each disciplinary case must be considered upon its own facts to decide what discipline, if any, is warranted. *Disciplinary Board v. Edwardson*, 2002 ND 106, ¶ 9, 647 N.W.2d 126.

### A

[¶ 8] Disciplinary Counsel argues the hearing panel erred in granting McKechnie's motion to strike his prior disciplinary history from the petition for discipline. The original petition for discipline listed as "an aggravating factor, under Standard 9.22(a), NDSILS," five prior admonitions McKechnie had received, and the circumstances underlying each violation. McKechnie moved to strike the prior disciplinary offenses because they were "presumptively confidential admonitions" and irrelevant and prejudicial during the initial phase of the disciplinary proceedings. The hearing panel agreed and granted the motion.

[¶ 9] Admonitions are a form of "nonpublic" discipline. N.D. Stds. Imposing Lawyer Sanctions 2.5; *In re Disciplinary Action Against Boulger,* 2001 ND 210, ¶ 16, 637 N.W.2d 710. Disciplinary Counsel agrees admonitions are confidential, but argues the proceedings become public under N.D.R. Lawyer Discipl. 6.1B once a petition for discipline is filed with the board, and because the disciplinary history of the attorney may be considered in deciding the degree of discipline to be imposed under N.D. Stds. Imposing Lawyer Sanctions 9.22, the disciplinary history becomes part of the public record of the case. *See Matter of Disciplinary Action Against Garcia,* 366 N.W.2d 482, 485 (N.D.1985).

[¶ 10] We recognize the inconsistency created when disputes over a proper sanction in a public disciplinary proceeding result in the disclosure of otherwise nonpublic disciplinary offenses. We agree with McKechnie that the details of prior private discipline should not be alleged in a petition for public discipline. A prior disciplinary history is relevant only in assessing sanctions after the allegations in the petition for discipline have been proven by clear and convincing evidence. Detailing prior admonitions in the petition could prejudice the hearing panel's consideration of the evidence in assessing the validity of the underlying charges. *Compare State v. Saul,* 434 N.W.2d 572, 575 (N.D.1989) (holding if criminal defendant stipulates to prior DUI convictions when charged under enhancement provisions of N.D.C.C. § 39–08–01, the submission of evidence of the defendant's prior convictions to a jury constitutes prejudicial and reversible error). Although due process requires fair notice as to the precise nature of the disciplinary charges, *see Matter of Disciplinary Action Against Hawkins,* 2001 ND 55, ¶ 17, 623 N.W.2d 431; *McDonald,* 2000 ND 87, ¶ 33, 609 N.W.2d 418,

we believe fair notice is accomplished in a case such as this with a general allegation in the petition for discipline stating aggravating circumstances under N.D. Stds. Imposing Lawyer Sanctions 9.22(a) will be presented at a later stage of the hearing. Details of the prior nonpublic violation need not and should not be alleged. Consequently, we conclude the hearing panel did not err in striking the detailed allegations of McKechnie's prior disciplinary offenses from the original petition for discipline.

[¶ 11] McKechnie argues that, notwithstanding the hearing panel's attempt to purify the record pending the hearing, references to the prior disciplinary history stemming from their original publication deprived him of a fair hearing. However, the hearing panel granted McKechnie's motion to strike, and we must presume the panel did not consider the details of the disciplinary history in finding McKechnie violated the rules of professional conduct. Although details of the prior admonitions were published by the media, we do not view this as depriving McKechnie of a fair hearing before the panel.

### B

[¶ 12] Disciplinary Counsel argues the hearing panel erred in excluding Follman from the proceedings except when he testified. At the beginning of the hearing, McKechnie moved to exclude all witnesses, including Follman, from the proceedings under N.D.R.E 615. Disciplinary Counsel did not object, and the hearing panel granted the motion. Because Disciplinary Counsel did not object at the hearing, we decline to address the matter.

### C

[¶ 13] Disciplinary Counsel argues the hearing panel erred in refusing to admit in

evidence, for impeachment purposes, a letter McKechnie wrote to Disciplinary Counsel during the early stages of these proceedings. Disciplinary Counsel did not lay a foundation for impeaching McKechnie with prior inconsistent statements, *see Sather v. Bigger*, 107 N.W.2d 38, 40–41 (N.D.1961), and has not shown how this evidence was critical to the case. We conclude the hearing panel did not err.

### D

[¶ 14] McKechnie argues there is no evidence that McKechnie violated any of the ethical rules in this case because Disciplinary Counsel presented no expert evidence of the applicable standard of care to support the charges. McKechnie presented expert testimony of a trial attorney who opined that McKechnie's actions in accepting $1,500 to investigate the claim during the initial consultation, in advising Follman about the statute of limitations, and in his response to Follman's correspondence, met the applicable standard of care under the circumstances. The expert witness also testified an attorney-client relationship did not exist until the written fee agreement was executed in May 1998. Disciplinary Counsel argues the hearing panel should not have admitted this testimony.

[¶ 15] We have said that expert testimony regarding the interpretation of the rules of professional conduct and whether a rule has been violated is inappropriate in a disciplinary proceeding. *See Boulger*, 2001 ND 210, ¶ 13, 637 N.W.2d 710. Interpretation of the rules of professional conduct, like interpretation of statutes, is a question of law for a court to decide. *See Hawkins v. Comm'n for Lawyer Discipline*, 988 S.W.2d 927, 936 (Tex. Ct.App.1999). "Although opinions of qualified writers and *amicus* briefs [on the interpretation of disciplinary rules] are

considered by this court, they are not an appropriate subject of expert testimony." *In re Masters*, 91 Ill.2d 413, 63 Ill.Dec. 449, 438 N.E.2d 187, 192 (1982).

[¶ 16] Although expert testimony is generally necessary in a legal malpractice action to establish the professional's standard of care and whether the professional's conduct in a particular case deviated from that standard of care, *Richmond v. Nodland*, 501 N.W.2d 759, 761 (N.D.1993), expert testimony on the standard of care required in a malpractice action is not required to aid the trier of fact in determining whether an attorney's actions violate the rules of professional conduct. *Hawkins*, 988 S.W.2d at 936. Disciplinary proceedings differ significantly, both procedurally and substantively, from civil legal malpractice actions. *See* 3 R. Mallen and J. Smith, *Legal Malpractice* § 19.7, at p. 103 (5th ed.2002) ("*Legal Malpractice*"); *see also Olson v. Fraase*, 421 N.W.2d 820, 828 (N.D.1988) (holding although conduct proscribed by a rule of professional conduct may also be relevant in determining whether an attorney has breached a civil duty an attorney owes a client, a violation of the rules does not itself form the basis for a claim for relief against a wrongdoing attorney). Whereas the rules of professional conduct set a minimum level of conduct with the consequence of disciplinary action, malpractice liability is premised upon the conduct of the reasonable lawyer under the particular circumstances. *See Legal Malpractice* § 19.7, at p. 104; *see also Matter of Disciplinary Action Against Jaynes*, 267 N.W.2d 782, 784 (N.D.1978) (stating the "fact that an injured party may recover from a lawyer in a malpractice action is in itself not sufficient to maintain the necessary high standard"). In *In re Disciplinary Action Against Howe*, 2001 ND 7, ¶ 6, 621 N.W.2d 361, we rejected an argument

that expert evidence of the standard of care is necessary to support charges in a disciplinary proceeding and quoted the hearing panel's resolution of the issue with approval:

In this case the standard of care is set forth in the rules themselves. There is no issue as to what the standard of care is. There is no dispute as to the interpretation of the standard of care, nor is the standard that of what a reasonably competent attorney might do under the same or similar circumstances.

As the court stated in *In re Conduct of Leonard*, 308 Or. 560, 784 P.2d 95, 100 (1989), expert witness testimony under these circumstances "amount[s] to nothing more than an oral brief as to why one particular construction of the governing disciplinary rule would not be violated by a particular hypothetical set of facts. The accused was able to make the same legal arguments through counsel, and did so. The evidence was not admissible."

[¶ 17] We conclude Disciplinary Counsel was not required to present expert testimony of the standard of care to support the charges in this case. We further conclude the expert testimony presented by McKechnie was not necessary to "assist the trier of fact to understand the evidence or to determine a fact in issue." N.D.R.E 702. We will ignore the expert testimony in our de novo review. *See Boulger*, 2001 ND 210, ¶ 13, 637 N.W.2d 710.

### E

[¶ 18] McKechnie argues he cannot be disciplined for an ethical violation because there was no attorney-client relationship established with Follman during 1996.

[¶ 19] "Traditionally, it has been said that the lawyer-client relationship begins when the client acknowledges the lawyer's capacity to act in his behalf and the lawyer agrees to act for the benefit and under the control of the client." *ABA/BNA Lawyers' Manual On Professional Conduct*, at 31:101 (2002) ("*ABA/BNA Manual*"). The existence of an attorney-client relationship is a fact question, necessarily dependent on the particular circumstances of the case. *Moen v. Thomas*, 2001 ND 110, ¶ 13, 628 N.W.2d 325. An attorney-client relationship may be implied from the conduct of the parties. *Stormon v. Weiss*, 65 N.W.2d 475, 520 (N.D.1954). "[I]t may arise when a putative client reasonably believes that a particular lawyer is representing him and the lawyer does not disabuse the individual of this belief." *ABA/BNA Manual*, at 31:101. *See also Moen*, at ¶ 15. The existence of the relationship does not depend on an express contract or the payment of fees. *Moen*, at ¶ 13.

[¶ 20] Here, Follman met with McKechnie in January 1996 and, according to Follman, McKechnie advised him that he had "a good claim, highly winnable" against Upper Valley and that he had three years from the date of his resignation to bring the lawsuit. Follman paid McKechnie $1,500, and McKechnie's staff prepared a "New Client Sheet" for the "sexual harassment" claim showing Follman had paid $500 in "costs" and a $1,000 "retainer." McKechnie obtained Follman's personnel file from Upper Valley and met with Follman in February 1996 to further discuss the case. Although no formal written fee agreement was executed at that time and McKechnie considered the $1,500 as merely an "investigative retainer," Follman testified he believed the $1,500 was paid to McKechnie "[t]o handle my claim." Follman's belief that McKechnie was acting as his attorney in the sexual harassment matter is a reasonable belief under the circumstances, and McKechnie's unexplained "retainer refund" was insufficient

to attempt to dispel that belief. We conclude an attorney-client relationship existed beginning in January 1996.

### F

 [¶ 21] ·McKechnie argues there is no clear and convincing evidence that he violated N.D.R. Prof. Conduct 1.1, which provides:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

[¶ 22] Disciplinary Counsel's theory for the violation is straightforward. McKechnie advised Follman in 1996 that Follman had three years from the date he resigned from Upper Valley to file the suit under the North Dakota Human Rights Act, N.D.C.C. ch. 14–02.4. However, under the Act, Follman's suit had to be filed within three years of the last discriminatory incident. *See Follman,* 2000 ND 72, ¶ 5, 609 N.W.2d 90.[1] Because McKechnie gave Follman incorrect legal advice about the statute of limitations, which resulted in Follman's case being dismissed, Disciplinary Counsel argues McKechnie violated N.D.R. Prof. Conduct 1.1.

[¶ 23] We note the California Supreme Court's concern over "the problems inherent in using disciplinary proceedings to punish attorneys for negligence, mistakes in judgment, or lack of experience or legal knowledge." *Lewis v. State Bar of California,* 28 Cal.3d 683, 170 Cal.Rptr. 634, 621 P.2d 258, 261 (1981). We share that concern. In C. Wolfram, *Modern Legal Ethics* § 5.1, at p. 190 (1986) (footnotes omitted), the author states:

To date, the enforcement of competence standards has been generally

limited to relatively exotic, blatant, or repeated cases of lawyer bungling. Lawyers who make some showing of effort, and who do nothing other than perform badly, rarely appear in the appellate reports in discipline cases. The lawyers who are disciplined for incompetence have usually aggravated their situation. For example, several cases involve lawyers who, after their incompetent work, concocted elaborate schemes or lies to deceive a client whose case was mishandled. Most decisions and official ABA policy insist that a single instance of "ordinary negligence" is usually not a disciplinary violation, although some decisions hold a lawyer to a standard of ordinary care that is similar to that required in malpractice cases ... or discipline a lawyer for a single instance of neglect. Consistent with that position, courts will discipline lawyers when the neglect is accompanied by some other violation, as an impermissible conflict of interest, or when the acts of negligence are repeated.

[¶ 24] We agree with the observation of the Arizona Supreme Court in *Matter of Curtis,* 184 Ariz. 256, 908 P.2d 472, 477–78 (1995) (footnote omitted):

Neither failure to achieve a successful result nor mere negligence in the handling of a case will necessarily constitute an ER 1.1 violation. We recognize the important distinction between conduct by an attorney that is simply negligent and conduct that rises to the level of an ethical violation. Clearly, the Bar must be vigilant in guarding the rights of clients, "but care should be taken to avoid the use of disciplinary action ... as a substitute for what is essentially a malpractice action." *See In re Myers,*

---

**1.** The Legislature has since shortened the limitations period. *See* N.D.C.C. § 14–02.4–19.

164 Ariz. 558, 561 n. 3, 795 P.2d 201, 204 n. 3 (1990) (citations and internal quotations omitted); *see also In re Mulhall,* 159 Ariz. 528, 531, 768 P.2d 1173, 1176 (1989) (noting that negligently allowing a statute of limitations to run does not constitute an ethical violation). Thus, although not every negligent act violates an ethical rule, neglect in investigating the facts and law necessary to present a client's claim crosses the fine line between simple neglect and conduct warranting discipline.

*See also The Florida Bar v. Neale,* 384 So.2d 1264, 1265 (Fla.1980) (stating the "rights of clients should be zealously guarded by the bar, but care should be taken to avoid the use of disciplinary action ... as a substitute for what is essentially a malpractice action"); *In re Complaint as to Conduct of Gygi,* 273 Or. 443, 541 P.2d 1392, 1396 (1975) (stating "we are not prepared to hold that isolated instances of ordinary negligence are alone sufficient to warrant disciplinary action"); *Committee on Legal Ethics v. Mullins,* 159 W.Va. 647, 226 S.E.2d 427, 430 (1976) (stating "[c]harges of isolated errors of judgment or malpractice in the ordinary sense of negligence would normally not justify the intervention of the ethics committee"), *overruled on other grounds, Committee on Legal Ethics v. Cometti,* 189 W.Va. 262, 430 S.E.2d 320, 330 (1993); 1 R. Mallen and J. Smith, *Legal Malpractice* § 1.9, at p. 45 (5th ed.2000) (stating "[o]rdinary negligence should not warrant discipline").

[¶ 25] Our caselaw accords with this view. In *In re Disciplinary Action Against Nassif,* 504 N.W.2d 311 (N.D. 1993), this Court publicly reprimanded for a violation of N.D.R. Prof. Conduct 1.1 a lawyer who, among other things, allowed a statute of limitations to run on a client's claim. However, *Nassif* involved more than an isolated instance of ordinary negligence. In *Nassif,* 504 N.W.2d at 312, 315, the lawyer was "oblivious[] to the statute of limitation," was unaware of the date of the client's injury, failed to communicate with the client, and when the client sought to change representation for her claim, the lawyer told her "he was still entitled to 'my share of the money,'" and would continue to handle her claim. In *In re Disciplinary Action Against Orvik,* 549 N.W.2d 671 (N.D.1996), we accepted a stipulation for discipline where the lawyer violated N.D.R. Prof. Conduct 1.1 and other rules by failing to file an action within the time required by the applicable statute of limitations and by failing to inform the client of the legal significance of the error until almost five years after the lawyer was hired to bring the action.

[¶ 26] In this case, McKechnie gave Follman incorrect legal advice about the statute of limitations and Follman's case was dismissed for failure to file within the limitations period. This evidence shows nothing more than an isolated instance of ordinary negligence, or error of judgment. We conclude there is no clear and convincing evidence that McKechnie violated N.D.R. Prof. Conduct 1.1.

### G

[¶ 27] McKechnie argues there is no clear and convincing evidence that he violated N.D.R. Prof. Conduct 1.4(b), which provides:

(b) A lawyer shall explain matters related to the representation to the extent reasonably necessary to permit the client to make informed decisions.

[¶ 28] The record shows McKechnie's contacts with Follman regarding the lawsuit were sporadic and, at times, confusing. McKechnie mailed Follman a $500 "retainer refund" without any further explanation. The advice McKechnie did provide

regarding the statute of limitations was incorrect. Although Follman told McKechnie of the dates incidents of harassment occurred at Upper Valley, McKechnie did not advise Follman during the ensuing two and one-half years that an action would have to be filed within three years from the date of the alleged wrongdoing. McKechnie argues that he gave Follman a copy of the applicable statute of limitations which would have advised him of the applicable limitations period. However, Follman paid McKechnie for his legal expertise and advice, and McKechnie could not satisfy his duty to explain matters related to the representation by simply providing Follman with a copy of the applicable statute, particularly when McKechnie specifically advised Follman he had until three years after his resignation to bring suit.

[¶ 29] We conclude there is clear and convincing evidence that McKechnie violated N.D.R. Prof. Conduct 1.4(b).

### III

[¶ 30] The hearing panel recommended that McKechnie be suspended from the practice of law for a period of 30 days under N.D. Stds. Imposing Lawyer Sanctions 2.2, and ordered that McKechnie be assessed the costs of the disciplinary proceedings in the amount of $5,375.59. McKechnie argues that a reprimand is more appropriate and that he should not be assessed any attorney fees and costs of the proceedings. Disciplinary Counsel argues this Court should suspend McKechnie's license to practice law for six months and one day, and that McKechnie be assessed the costs of this review in addition to the costs recommended by the hearing panel.

### A

[¶ 31] The violation of N.D.R. Prof. Conduct 1.4(b) is premised on McKechnie's failure to correctly advise Follman about the statute of limitations and the status of the representation. Rule 4.53, N.D. Stds. Imposing Lawyer Sanctions, provides:

> 4.53 Reprimand is generally appropriate when a lawyer:
>
> (a) demonstrates failure to understand relevant legal doctrines or procedures and causes injury or potential injury to a client. . . .

[¶ 32] We believe a public reprimand is an appropriate sanction under the circumstances. Although prior disciplinary offenses are aggravating factors under N.D. Stds. Imposing Lawyer Sanctions 9.22(a), we do not view McKechnie's prior admonitions as warranting a sanction more severe than a public reprimand.

### B

[¶ 33] Unless otherwise ordered by the court or hearing panel, costs and expenses of disciplinary proceedings must be assessed against the lawyer if discipline is imposed. *Howe*, 2001 ND 86, ¶ 35, 626 N.W.2d 650. Although an allegation of misconduct involving another client of McKechnie was dismissed by the hearing panel in these proceedings, the allegations of misconduct involving Follman comprised the major part of the hearing. The evidence relating to McKechnie's alleged violations of N.D.R. Prof. Conduct 1.1 and 1.4(b) overlapped. We agree with the hearing panel and order that McKechnie pay the costs of the disciplinary proceedings in the amount of $5,375.59. We deny Disciplinary Counsel's request that McKechnie be assessed the attorney fees and costs of this review.

### IV

[¶ 34] We conclude McKechnie violated N.D.R. Prof. Conduct 1.4(b), and we order that he be publicly reprimanded and pay

the costs of the disciplinary proceedings in the amount of $5,375.59.

[¶ 35] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.