2016 ND 115

In the Matter of the Application for DISCIPLINARY ACTION AGAINST

Michael WARD, a Member of the Bar of the State of North Dakota.

Disciplinary Board of the Supreme Court, Petitioner

v.

Michael Ward, Respondent.

No. 20150354.

Supreme Court of North Dakota.

June 10, 2016.

Kara J. Johnson (argued) and Ryan A. Heintz (appeared), Disciplinary Staff, Bismarck, N.D., for petitioner.

Ronald H. McLean (argued) and Ian McLean (appeared), Fargo, N.D., for respondent.

PER CURIAM.

[¶ 1] Attorney Michael Ward objects to a report of a hearing panel of the Disciplinary Board finding he violated professional rules of conduct and recommending he be suspended from the practice of law for four months and pay the costs of the

disciplinary proceedings. Ward argues the hearing panel erred in finding he violated N.D.R. Prof. Conduct 1.1 relating to competence and N.D.R. Prof. Conduct 1.3 relating to diligence. We conclude there is not clear and convincing evidence of a violation, and we decline to adopt the hearing panel's recommendation. We dismiss the petition for discipline.

I

[¶ 2] Ward was admitted to practice law in North Dakota in 1966. On April 2, 2012, Margaret Oakland contacted Ward to inquire about representation for contesting her father's will and revocable trust. On April 3, 2012, Oakland emailed Ward copies of documents related to her case. Oakland claims she included a letter dated March 12, 2012, from the trustee of her father's trust, notifying her that she had 120 days to contest the validity of the trust. Ward's office staff later notified Oakland that he was unable to take her case at that time. Oakland hired Chris Kennelly to represent her, and she objected to the will within the probate case.

[¶ 3] On May 1, 2012, Ward contacted Oakland by email, requesting she call him. His email also stated that he thought some of the documents she sent him were interesting but it seemed like a complicated matter and he would have a better understanding after speaking to her. Oakland spoke to Ward, but continued to be represented by Kennelly.

[¶ 4] On May 17, 2012, Ward contacted Oakland and offered to take her case on a contingent fee basis, and Oakland later decided to have Ward represent her. In a letter dated June 4, 2012, Oakland notified Kennelly she wanted to be represented by a different attorney, she would like the change of counsel to be completed as soon as possible, she did not want him to perform any more billable services, and she wanted to pick up her file. Oakland emailed a copy of this letter to Ward.

[¶ 5] On June 14, 2012, Oakland met with Ward in Grand Forks. Oakland testified that she asked Ward whether he was her attorney and he confirmed he would be representing her. Oakland gave Ward additional documents and the file from Kennelly's office, which she claimed contained the March 12, 2012, letter from the trustee informing her she had 120 days to contest the validity of the trust.

[¶ 6] In late June and early July, Oakland sent Ward emails about completing the substitution of counsel because Kennelly was still the attorney of record for the case and he continued to receive correspondence related to the case. On July 10, 2012, Ward sent Kennelly a notice of substitution of counsel for Kennelly to sign. Notice of substitution of counsel was filed with the district court on July 11, 2012. In August 2012, Oakland received a contingent fee agreement from Ward.

[¶ 7] In September 2012, Ward amended Oakland's objection in the probate case to include an objection to the trust. On October 15, 2012, Ward spoke to the trustee's attorney and was informed that the 120-day statute of limitations to contest the validity of the trust had passed. On October 18, 2012, Ward initiated a civil case contesting the will and the trust. On October 20, 2012, Oakland informed Ward she had included the March 12, 2012, notice letter in the documents she emailed him on April 3, 2012. The next day, Ward informed Oakland he was ending his representation. Oakland represented herself in the probate proceedings, but she was unsuccessful and her objection to the probate of her father's will was dismissed. The district court's decision was affirmed on appeal. *In re Estate of Gassmann*, 2015 ND 188, 867 N.W.2d 325.

[¶ 8] In April 2014, disciplinary counsel filed a petition for discipline against Ward, alleging he violated N.D.R. Prof. Conduct 1.1 related to competence, N.D.R. Prof. Conduct 1.3 related to diligence, and N.D.R. Prof. Conduct 1.4 related to communication. Disciplinary counsel alleged Ward failed to act with reasonable competence and diligence in challenging Oakland's father's will and trust and he failed to adequately communicate with Oakland about the status of pending matters. Ward denied that any ethical misconduct had occurred and requested the petition be dismissed.

[¶ 9] After a hearing, the hearing panel found Ward violated N.D.R. Prof. Conduct 1.1 because he failed to review the documentation Oakland gave him and become aware of the 120–day statute of limitations. The hearing panel also found Ward failed to be prompt and diligent in executing the substitution of counsel, which violated N.D.R. Prof. Conduct 1.3. The hearing panel found there was not enough evidence to establish Ward violated N.D.R. Prof. Conduct 1.4. The hearing panel considered N.D. Stds. Imposing Lawyer Sanctions 4.42(a), 4.53(a), and 9.22(d), (i), and recommended Ward be suspended from the practice of law for four months and pay the costs and expenses of the disciplinary proceedings in the amount of $11,804.45. Ward filed objections with this Court.

## II

[¶ 10] Our standard for reviewing disciplinary proceedings is well-established:

This Court reviews disciplinary proceedings de novo on the record. Disciplinary counsel must prove each alleged violation by clear and convincing evidence, which means the trier of fact must be reasonably satisfied with the facts the evidence tends to prove and thus be led to a firm belief or conviction. The evidence need not be undisputed to be clear and convincing. We give due weight to the findings, conclusions, and recommendations of the Disciplinary Board, but we do not act as a mere rubber stamp for the Board. To decide which sanction, if any, is appropriate, each disciplinary matter must be considered on its own facts.

Because the hearing panel has the opportunity to hear witnesses and observe their demeanor, we accord special deference to the panel's findings on matters of conflicting evidence. Similarly, we defer to the hearing panel's findings on the credibility of a witness, because the hearing panel has the opportunity to observe the witness's demeanor and hear the witness testify.

*Disciplinary Board v. Carpenter*, 2015 ND 111, ¶ 9, 863 N.W.2d 223 (quoting *Disciplinary Board v. Askew*, 2010 ND 7, ¶¶ 8–9, 776 N.W.2d 816) (citations omitted).

## III

[¶ 11] Ward argues the hearing panel erred in finding there was clear and convincing evidence he violated N.D.R. Prof. Conduct 1.1 and 1.3.

### A

[¶ 12] Ward claims he did not become Oakland's attorney until July 11, 2012, which was one day after the statute of limitations for objecting to the trust expired. The lawyer-client relationship begins when the client acknowledges the lawyer's capacity to act on her behalf and the lawyer agrees to act for the benefit and under the control of the client. *Disciplinary Board v. McKechnie*, 2003 ND 22, ¶ 19, 656 N.W.2d 661. The existence of an attorney-client relationship depends on the circumstances of the case and may be im-

plied from the parties' conduct, but it does not depend on an express contract or the payment of fees. *Id.* An attorney-client relationship "may arise when a putative client reasonably believes that a particular lawyer is representing him and the lawyer does not disabuse the individual of this belief." *Id.* (quoting *ABA/BNA Lawyers' Manual On Professional Conduct*, at 31:101 (2002)).

[¶ 13] In April and May of 2012, Oakland contacted and spoke with Ward several times, including emailing him documents related to the claims she wanted to pursue. In June, she sent Kennelly a letter informing him she was changing her representation, and she sent Ward a copy of the letter. Oakland met with Ward on June 14, 2012, and they discussed her case and reviewed documents. Oakland testified she asked Ward at the end of the meeting whether he was representing her and he said he was. After the meeting, Oakland contacted Ward several times about completing the substitution of counsel. Although no formal contract had been signed and Oakland had not paid Ward any fees, she had a reasonable belief Ward was representing her and he did not disabuse her of that belief. We conclude an attorney-client relationship existed beginning on June 14, 2012, which was before the statute of limitations expired.

### B

[¶ 14] Rule 1.1, N.D.R. Prof. Conduct, states, "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." The comment to the rule states:

> Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation. The required attention and preparation are determined in part by what is at stake; major litigation and complex transactions ordinarily require more extensive treatment than matters of lesser consequence.

N.D.R. Prof. Conduct 1.1, cmt. 6.

[¶ 15] Rule 1.3, N.D.R. Prof. Conduct, states, "A lawyer shall act with reasonable diligence and promptness in representing a client." The comments to the rule provide that a lawyer must work with commitment and dedication to the client's interests, the client's interests may be adversely affected by the passage of time or a change in conditions, and, in extreme instances, the client's position may be destroyed, such as when a lawyer overlooks the statute of limitations. N.D.R. Prof. Conduct 1.3, cmt. 3. We have said "reasonable diligence" is "[a] fair degree of diligence expected from someone of ordinary prudence under circumstances like those at issue." *Disciplinary Board v. Howe*, 2014 ND 44, ¶ 16, 843 N.W.2d 325 (quoting *Black's Law Dictionary* 468 (7th ed.1999)).

[¶ 16] The hearing panel found there was clear and convincing evidence Ward failed to be competent in his representation of Oakland, violating N.D.R. Prof. Conduct 1.1, because he failed to adequately review the documentation Oakland provided, he failed to realize that the 120–day statute of limitations notice letter had been sent, he was aware a revocable trust was involved but did not verify whether a notice letter had been sent and the statute of limitations had begun to run, and he was not aware of the statute of limitations until it had passed. The hearing panel also found there was clear and convincing evidence Ward violated N.D.R. Prof. Conduct

1.3 because he failed to be prompt and diligent in executing the substitution of counsel, which allowed the statute of limitations to expire and made any action taken on Oakland's behalf time barred.

[¶ 17] Ward's failure to object to the validity of the trust on Oakland's behalf was the basis for the hearing panel's recommendation that Ward violated both N.D.R. Prof. Conduct 1.1 and 1.3. Ward claims he represented Oakland for only a month at most before the statute of limitations expired and there was no evidence that he was made aware of the March 12, 2012, notice letter. He contends he did not receive the April 3, 2012, email with the attached documents, Oakland never asked him whether he received the documents, there was no evidence the notice letter was included in Oakland's file from Kennelly's office, and Oakland never informed him of the pending expiration of the statute of limitations.

[¶ 18] This Court has interpreted N.D.R. Prof. Conduct 1.1 and 1.3 in prior cases. *See Disciplinary Board v. Hoffman,* 2005 ND 153, 703 N.W.2d 345 (N.D.R. Prof. Conduct 1.1 and 1.3); *McKechnie,* 2003 ND 22, 656 N.W.2d 661 (N.D.R. Prof. Conduct 1.1); *Disciplinary Board v. Nassif,* 504 N.W.2d 311 (N.D. 1993) (N.D.R. Prof. Conduct 1.1 and 1.3). We have expressed concern in disciplining an attorney for a single occasion of negligence, stating:

> We note the California Supreme Court's concern over "the problems inherent in using disciplinary proceedings to punish attorneys for negligence, mistakes in judgment, or lack of experience or legal knowledge." *Lewis v. State Bar of California,* 28 Cal.3d 683, 170 Cal. Rptr. 634, 621 P.2d 258, 261 (1981). We share that concern. In C. Wolfram, *Modern Legal Ethics* § 5.1, at p. 190

(1986) (footnotes omitted), the author states:

> To date, the enforcement of competence standards has been generally limited to relatively exotic, blatant, or repeated cases of lawyer bungling. Lawyers who make some showing of effort, and who do nothing other than perform badly, rarely appear in the appellate reports in discipline cases. The lawyers who are disciplined for incompetence have usually aggravated their situation. For example, several cases involve lawyers who, after their incompetent work, concocted elaborate schemes or lies to deceive a client whose case was mishandled. Most decisions and official ABA policy insist that a single instance of "ordinary negligence" is usually not a disciplinary violation, although some decisions hold a lawyer to a standard of ordinary care that is similar to that required in malpractice cases . . . or discipline a lawyer for a single instance of neglect. Consistent with that position, courts will discipline lawyers when the neglect is accompanied by some other violation, as an impermissible conflict of interest, or when the acts of negligence are repeated.

We agree with the observation of the Arizona Supreme Court in *Matter of Curtis,* 184 Ariz. 256, 908 P.2d 472, 477–78 (1995) (footnote omitted):

> Neither failure to achieve a successful result nor mere negligence in the handling of a case will necessarily constitute an ER 1.1 violation. We recognize the important distinction between conduct by an attorney that is simply negligent and conduct that rises to the level of an ethical violation. Clearly, the Bar must be vigilant in guarding the rights of clients, "but care should be taken to avoid the use of disciplinary action . . . as a substitute for what

is essentially a malpractice action." *See In re Myers*, 164 Ariz. 558, 561 n. 3, 795 P.2d 201, 204 n. 3 (1990) (citations and internal quotations omitted); *see also In re Mulhall*, 159 Ariz. 528, 531, 768 P.2d 1173, 1176 (1989) (noting that negligently allowing a statute of limitations to run does not constitute an ethical violation). *McKechnie*, at ¶¶ 23–24; *see also Hoffman*, at ¶ 9. We have said "an isolated act of negligence will not necessarily satisfy the broad, generic concepts of incompetence or lack of diligence." *Disciplinary Board v. Feland*, 2012 ND 174, ¶ 36, 820 N.W.2d 672.

[¶ 19] In *Hoffman*, 2005 ND 153, ¶¶ 3–4, 703 N.W.2d 345, Hoffman incorrectly calculated the filing date for post-conviction relief in state court that would toll the time to file for federal habeas corpus relief. As a result of Hoffman's error, his client's federal habeas corpus petition was dismissed because it was not timely filed. *Id.* at ¶ 5. This Court said Hoffman was negligent in failing to correctly interpret the law, but Hoffman's actions constituted an isolated instance of ordinary negligence and there was not clear and convincing evidence he violated N.D.R. Prof. Conduct 1.1 or 1.3. *Id.* at ¶¶ 15–17.

[¶ 20] In *McKechnie*, 2003 ND 22, ¶¶ 2–5, 656 N.W.2d 661, McKechnie gave his client incorrect legal advice about the statute of limitations in a discrimination lawsuit against the client's former employer. The statute of limitations required the suit be filed within three years of the last discriminatory incident, and McKechnie incorrectly advised his client he had three years from the date he resigned from the employment. *Id.* at ¶ 22. The client's case was dismissed for failure to file within the limitations period. *Id.* at ¶ 26. This Court held the evidence showed nothing more than an isolated instance of ordinary negligence or an error of judgment, and there was not clear and convincing evidence the attorney violated N.D.R. Prof. Conduct 1.1. *Id.*

[¶ 21] In *Nassif*, however, we held the attorney violated N.D.R. Prof. Conduct 1.1 and 1.3. *Nassif*, 504 N.W.2d at 312–13. We said Nassif was oblivious to the statute of limitations, unaware of the date of his client's injury and unprepared to press her claim, maintained "little, if any file," failed to communicate with the client, and insisted that he continue to handle his client's claim when she sought to change representation because he was entitled to his "share of the money." *Id.* at 312, 314–15.

[¶ 22] In a letter dated March 12, 2012, the trustee sent Oakland notice that she had 120 days to contest the validity of her father's trust. Under N.D.C.C. § 59–14–04(1):

> A person shall commence a judicial proceeding to contest the validity of a trust that was revocable immediately before the settlor's death within the earlier of three years after the settlor's death or one hundred twenty days after the trustee sent the person a copy of the trust instrument and a notice informing the person of the trust's existence, of the trustee's name and address, and of the time allowed for commencing a proceeding.

The statute of limitations for Oakland to object to the validity of the trust expired on July 10, 2012.

[¶ 23] Ward did not object to the validity of the trust on Oakland's behalf before the statute of limitations expired, and Oakland's action contesting the validity of the trust was dismissed for failure to file within the statute of limitations period. Oakland testified she sent Ward an email with the notice letter from the trustee attached on April 3, 2012, months before

Ward began representing her. She testified she gave him a copy of the file from her previous attorney and she believed the notice letter was included in the file, but the file seemed much smaller than she expected and she did not remember which documents were included in the file. Oakland also testified she told her previous attorney she was concerned about the 120–day statute of limitations, but she did not remember ever discussing it with Ward. Ward testified he was aware of the statute of limitations but he believed Oakland had three years to contest the validity of the trust because he was not aware she had received a notice letter from the trustee.

[¶ 24] Although Ward knew a revocable trust was involved and the statute of limitations applied, there is not clear and convincing evidence he had a copy of the notice letter in his possession after he began representing Oakland, and there is no evidence Oakland ever told him she had received the letter. Ward's actions do not rise to the same level as Nassif's, and are more like Hoffman's and McKechnie's actions. On this record, Ward's failure to object to the trust before the statute of limitations expired is, at best, nothing more than an isolated instance of ordinary negligence. There is no evidence of other egregious conduct coupled with this single instance of possible negligence. *See McKechnie*, 2003 ND 22, ¶ 23, 656 N.W.2d 661; *Hoffman*, 2005 ND 153, ¶ 17, 703 N.W.2d 345. We conclude there is not clear and convincing evidence Ward violated N.D.R. Prof. Conduct. 1.1 and 1.3.

## IV

[¶ 25] We decline to adopt the hearing panel's recommendation. We dismiss the petition for discipline.

[¶ 26] JOHN T. PAULSON, S.J., GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, DANIEL J. CROTHERS and LISA FAIR McEVERS, JJ., concur.

[¶ 27] The Honorable JOHN T. PAULSON, S.J., sitting in place of KAPSNER, J., disqualified.